IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CONTINENTAL CASUALTY COMPANY, )
)
Plaintiff, )
)
v. ) Civil Action No. 06-829
)
FLEMING STEEL COMPANY, SETH )
KOHN and KENDA KOHN, )
)
Defendants. )

MEMORANDUM

INTRODUCTION

In this indemnification action, Plaintiff, Continental Casualty Company ("Continental Casualty"), has filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons set forth below, the motion will be granted.

BACKGROUND

Related Litigation

In February 2000, the United States Navy awarded W.M. Schlosser Company, Inc. ("Schlosser") the prime contract for construction of an acoustical aircraft enclosure or "hush house" at the Oceana Naval Air Station in Virginia Beach, Virginia ("the Oceana Project"). In turn, Schlosser entered into a subcontract with Defendant Fleming Steel Company ("Fleming Steel") for fabrication of the acoustical intake sliding doors for the "hush house." As required by the subcontract, Fleming Steel procured a performance bond to guarantee the quality of its work on the

1

Oceana project. The performance bond was issued by Continental Casualty on June 8, 2000 in the amount of $1,661,283.00.[1]

In March 2002, Schlosser terminated its subcontract with Fleming Steel for the Oceana project due to Fleming Steel's failure to fabricate the acoustical intake sliding doors for the "hush house" in accordance with contract specifications. Several months later, Fleming Steel filed a breach of contract against Schlosser in this Court which was assigned Civil Action No. 02-828. Fleming Steel alleged that Schlosser had terminated the subcontract for its own convenience, rather than for cause, and, therefore, Fleming Steel was entitled to damages under Article 29 of the subcontract. In its answer to Fleming Steel's complaint, Schlosser asserted a counterclaim for breach of contract, seeking to recover the costs incurred to correct and complete Fleming Steel's work on the Oceana project.

On April 17, 2003, Schlosser filed a civil action against Continental Casualty in the United States District Court for the Eastern District of Virginia seeking indemnification for the damages sustained as a result of Fleming Steel's breach of the subcontract for the Oceana project. The indemnification claim was based on the performance bond issued by Continental Casualty to guarantee Fleming Steel's work on the Oceana project.

---

[1] CNA Surety Company ("CNA") underwrites all surety business written on the policies of Continental Casualty. See Docket No. 26, ¶ 1.

2

Schlosser's indemnification case was transferred to this Court on September 11, 2003 and assigned Civil Action No. 03-1338.[2] On March 20, 2006, Civil Action No. 03-1338 was consolidated with Civil Action No. 02-828 and closed.

On July 10, 2006, the Court granted summary judgment in favor of Schlosser on the issue of Fleming Steel's liability for breach of the subcontract on the Oceana project. Specifically, the Court concluded the undisputed facts established that Schlosser's termination of the subcontract with Fleming Steel was for cause (i.e., Fleming Steel's failure to fabricate the acoustical intake sliding doors for the "hush house" in accordance with contract specifications). Four days later, the Court (a) adopted the report and recommendation of a Special Master who had been appointed to perform an accounting of the damages alleged by Schlosser in its counterclaim against Fleming Steel and (b) entered judgment in the amount of $354,646.43 in favor of Schlosser and against Fleming Steel for breach of the subcontract and against Continental Casualty as Fleming Steel's surety for the Oceana project ("the original judgment").[3]

---

[2] On September 22, 2003, Continental Casualty tendered the defense of Civil Action No. 03-1338 to Fleming Steel, as requested, in an effort to reduce Fleming Steel's counsel fees and expenses.

[3] In its counterclaim against Fleming Steel for breach of the subcontract, Schlosser sought damages in the amount of $690,317.26. After disallowing (a) expenses sought by Schlosser for quality control which he determined was not Fleming Steel's responsibility (-$19,186.83), (b) costs incurred by Schlosser to

3

On July 21, 2006, Fleming Steel and Continental Casualty filed a notice of appeal from the original judgment to the Court of Appeals for the Third Circuit.[4] A week later, Schlosser filed a motion under Fed.R.Civ.P. 59(e) to alter or amend the original judgment to include (1) an award of prejudgment interest from both Fleming Steel and Continental Casualty and (2) an award of attorneys' fees and costs from Continental Casualty under the performance bond which provided that Schlosser would be held harmless from "any and all loss, damage, and expense, including costs and attorney's fees," which Schlosser may sustain by reason of Fleming Steel's failure to "well and truly perform all the undertakings, covenants, terms, conditions, and agreements of said Subcontract."[5] On August 17, 2006, the Court denied the

---

purchase duplicate "mock-up stands" which he found to be unnecessary (-$16,120.00) and (c) a portion of damage to materials sustained by Schlosser which he found were not attributable to Fleming Steel's inadequate preparation of the materials for shipment (-$15,000.00), the Special Master recommended that Schlosser be awarded damages in the amount of $640,010.43. After deducting the unpaid balance of the subcontract ($285,364.00), the net damage award to Schlosser was $354,646.43.

[4] In conjunction with the notice of appeal, Fleming Steel filed a supersedeas bond in the amount of $425,576.00 to stay execution of the original judgment pending disposition of the appeal.

[5] As noted in footnote 2, Continental Casualty tendered its defense in Civil Action No. 02-828 to Fleming Steel, and Fleming Steel opposed Schlosser's motion for an award of attorneys' fees and costs against Continental Casualty. Noting that the obligation of a surety (Continental Casualty) to an obligee (Schlosser) generally can be no greater than that of the principal (Fleming Steel), and that a provision allowing

Rule 59(e) motion without prejudice to Schlosser's right to renew the motion in the event the appeal filed by Fleming Steel and Continental Casualty was resolved in Schlosser's favor.

On July 9, 2008, the Court of Appeals dismissed the appeal of Fleming Steel and Continental Casualty for lack of jurisdiction. Specifically, the Court of Appeals concluded that because the attorneys' fees and costs sought by Schlosser in the Rule 59(e) motion were based on the terms of the performance bond issued by Continental Casualty to guarantee Fleming Steel's work on the Oceana project, the attorneys' fees and costs were an "integral part" of the relief sought by Schlosser from Continental Casualty. Therefore, the original judgment would not become a final, appealable order as to Continental Casualty until the attorneys' fees and costs to which Schlosser was entitled under the performance bond were calculated.

Thereafter, on October 21, 2008, the Court granted Schlosser's Rule 59(e) motion and entered judgment in favor of Schlosser and against Fleming Steel in the amount of $438,039.57,[6] and against Continental Casualty in the amount of

---

attorneys' fees and costs to be imposed on a defaulting party had been negotiated out of the subcontract by Fleming Steel prior to its execution, Fleming Steel argued that Schlosser was not entitled to recover attorneys' fees and costs from Continental Casualty, despite the language in the performance bond providing for the recovery of such fees and costs.

[6]The judgment entered against Fleming Steel on October 21, 2008 consisted of (a) the costs incurred to correct and complete Fleming Steel's work on the subcontract for the Oceana project

5

$768,767.32 ("the amended judgment").⁷ Ten days later, Fleming Steel and Continental Casualty filed a motion for reconsideration of the Court's Memorandum Opinion granting Schlosser's Rule 59(e) motion and the amended judgment.

On November 19, 2008, Fleming Steel and Continental Casualty filed a notice of appeal from the amended judgment. The next day, Schlosser filed a notice of cross-appeal from the amended judgment.⁸ On February 5, 2009, the Court granted in part and denied in part the motion of Fleming Steel and Continental Casualty for reconsideration of Schlosser's Rule 59(e) motion, and a second amended judgment was filed in which judgment was

---

($354,646.43), (b) prejudgment interest on those costs ($81,284.96) and (c) postjudgment interest through the date of the decision ($2,108.18).

⁷The amended judgment against Continental Casualty consisted of the sums that had been awarded in favor of Schlosser and against Fleming Steel ($438,039.57), as well as the attorneys' fees and costs incurred by Schlosser due to Fleming Steel's breach of the subcontract for the Oceana project ($263,012.54), prejudgment interest on the attorneys' fees and costs ($60,282.47), and additional postjudgment interest through the date of the decision ($7,432.74). The Court awarded attorneys' fees and costs to Schlosser from Continental Casualty because, as noted previously, the performance bond for the Oceana project provided for their recovery in the event Fleming Steel breached the subcontract. Based on the performance bond's specific language, the general rule regarding the limit of a surety's liability under a performance bond, which was the basis for Fleming Steel's opposition to an award of attorneys' fees and costs in favor of Schlosser and against Continental Casualty (see footnote 5), did not apply.

⁸In its cross-appeal, Schlosser argued that it was entitled to more interest than the Court had awarded in the amended judgment.

6

entered in favor of Schlosser and against Fleming Steel in the amount of $438,039.57 and against Continental Casualty in the amount of $753,883.54.[9]

On February 13, 2009, Fleming Steel and Continental Casualty filed a motion for approval of a supersedeas bond in the sum of $829,271.89 to stay execution of the second amended judgment pending a decision by the Court of Appeals on the cross-appeals. Following the Court's approval,[10] Fleming Steel and Continental Casualty were permitted to withdraw the deposit for the supersedeas bond filed by Fleming Steel in connection with the appeal from the original judgment in Civil Action No. 02-828,[11] together with accrued interest, and the Clerk of Court was instructed to issue a check to Continental Casualty for those sums which totaled $453,339.40.

On September 15, 2009, the Court of Appeals issued a decision on the cross-appeals (a) affirming the Court's order granting summary judgment in favor of Schlosser on the issue of

---

[9]The $14,883.78 reduction in the second amended judgment entered against Continental Casualty was attributable to adjustments in the postjudgment interest (-$7,432.74) and the prejudgment interest on attorneys' fees and costs (-$7,451.04) awarded to Schlosser in the amended judgment.

[10]The premium for the second supersedeas bond, which was $16,585.00, was paid by Continental Casualty on Fleming Steel's behalf. The cost of the premium for the supersedeas bond is one of the items of damages sought by Continental Casualty in this case.

[11]See footnote 4.

Fleming Steel's liability for breaching the subcontract on the Oceana project, (b) affirming the calculation of Schlosser's damages by the Special Master and the Court, (c) affirming the Court's award of attorneys' fees and costs in favor of Schlosser and against Continental Casualty pursuant to the terms of the performance bond, and (d) rejecting the argument of Schlosser that it should have been awarded more prejudgment and postjudgment interest by the Court. Two weeks later, Fleming Steel and Continental Casualty filed a petition for panel rehearing, which was denied on August 11, 2010.

**Present Litigation**

On April 24, 2000, Fleming Steel, Seth Kohn and Kenda Kohn (collectively, "the Indemnitors") entered into a General Agreement of Indemnity ("the GAI") with Continental Casualty in anticipation of Continental Casualty becoming Fleming Steel's surety for construction projects.[12]  See Docket No. 22-2 and

---

[12]In this connection, the second paragraph of the GAI provided:

> "WHEREAS, in the transaction of business certain bonds, undertakings and other writings obligatory in the nature of a bond, hereinafter referred to as "bond" or "bonds," may have heretofore been, and may hereafter be, required by, for, or on behalf of the undersigned Indemnitors or any one or more of the Indemnitors in whose bonds and undertakings the Indemnitors do hereby affirm to have a substantial material or beneficial interest, and as a condition precedent to the execution of any and all such bonds, [Continental Casualty] requires execution of this General Agreement of Indemnity."

8

Docket No. 28. In early June 2006, after the Special Master's recommendation in Civil Action No. 02-828 that Schlosser be awarded damages in the amount of $640,010.43, Continental Casualty revised a prior demand on the Indemnitors under the GAI to provide funds or collateral to protect Continental Casualty in the event the Special Master's recommendation was adopted by the Court. Based on the Indemnitors' failure to deliver funds or collateral to Continental Casualty pursuant to the terms of the GAI as demanded, Continental Casualty commenced this civil action against the Indemnitors on June 21, 2006.[13] On September 13,

---

[13] With regard to Continental Casualty's demand for delivery of collateral by the Indemnitors prior to the entry of a final judgment in Civil Action No. 02-828, the GAI stated:

> "3. Payment shall be made to [Continental Casualty] by the Indemnitors as soon as liability exists or is asserted against [Continental Casualty], whether or not [Continental Casualty] shall have made any payment therefor. Such payment shall be either equal to the larger of (a) the amount of any reserve set by [Continental Casualty], or (b) such amount as [Continental Casualty], in its sole judgment, shall deem sufficient to protect it from loss. [Continental Casualty] shall have the right to use the deposit, or any part thereof, in payment or settlement of any liability, loss or expense for which the Indemnitors would be obligated to indemnify [Continental Casualty] under the terms of this Agreement. If for any reason [Continental Casualty] shall deem it necessary to increase a reserve to cover any possible liability or loss, the Indemnitors will deposit with [Continental Casualty], immediately upon demand, a sum of money equal to any increase thereof as collateral security to [Continental Casualty] for that liability or loss."

Continental Casualty's claim against the Indemnitors for additional collateral under paragraph 3 of the GAI has been rendered moot by the resolution of Civil Action No. 02-828.

2006, the Court stayed the case in light of the appeal filed by Fleming Steel and Continental Casualty on July 21, 2006 from the original judgment in Civil Action No. 02-828.

On September 22, 2009, a week after the Court of Appeals issued its decision on the cross-appeals filed by the parties from the second amended judgment in Civil Action No. 02-828, Continental Casualty filed a motion to lift the stay in this case and for leave to file an amended complaint in light of events that had transpired since its original complaint was filed. The motion was granted, and, following a case management conference on December 3, 2009, Continental Casualty was directed to file a motion for summary judgment and supporting brief by January 11, 2010, and the Indemnitors were directed to file a brief in opposition by February 8, 2010.

Shortly after the motion for summary judgment and the supporting and opposing briefs were filed, the Court became aware of the pending petition for panel rehearing that had been filed by Fleming Steel and Continental Casualty in their appeal from the second amended judgment in Civil Action No. 02-828, and this case was stayed a second time. Following the Court of Appeals' denial of the petition for panel rehearing on August 11, 2010, the stay was lifted.

On August 19, 2010, the Indemnitors filed an amended brief in opposition to Continental Casualty's motion for summary judgment, and, on September 10, 2010, Continental Casualty filed

a reply to the amended brief in opposition. With its reply, Continental Casualty submitted a supplemental affidavit of Jerome C. Gardocky, its Senior Claims Counsel, in which he avers that Schlosser, Fleming Steel, Continental Casualty and the Kohns entered into a General Release and Assignment Agreement on August 25, 2010 "which, among other things, called for the payment by [Continental Casualty] to Schlosser of $900,000 and the preservation of the rights of the Indemnitors to litigate the issue of their liability to [Continental Casualty] for any damages stemming from the Schlosser litigation including, but not limited to, attorneys' fees and interest on attorneys' fees." (Docket No. 25, ¶ 5).

In his supplemental affidavit, Mr. Gardocky further avers that the total loss incurred by Continental Casualty as a result of the Schlosser litigation and this indemnity action is $950,772.06, which includes:

| | |
|---|---:|
| Schlosser judgment: | $900,000.00 |
| 6% interest since 8/25/10 | 1,035.65 |
| Unpaid supersedeas premium | 16,585.00 |
| 6% interest since 2/13/10 | 546.00 |
| Attorneys' fees and costs to 9/1/10 | 32,605.41 |

After deducting the current value of Fleming Steel's deposit with the Court for a supersedeas bond in the first appeal of Civil Action No. 02-828 ($451,249.45), which was returned to Continental Casualty upon the filing of the supersedeas bond for the second appeal, Mr. Gardocky avers that Continental Casualty's

unreimbursed loss is "$499,522.61 plus interest, costs and attorneys fees from and after September 1, 2010." (Docket No. 25, ¶ 8).

The Indemnitors do not object to Continental Casualty's indemnification claim in its entirety. Rather, the Indemnitors' objection is limited to Continental Casualty's request for indemnification of the portion of the second amended judgment in Civil Action No. 02-828 awarding attorneys' fees and costs ($263,012.54), and interest on those attorneys' fees and costs (52,831.43), in favor of Schlosser and against Continental Casualty under the performance bond issued to guarantee Fleming Steel's work on the Oceana project.

**LEGAL STANDARD**

Under Rule 56(c)(2) of the Federal Rules of Civil Procedure, summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." With regard to the fact that the relief sought by Continental Casualty in this case is based on the GAI executed by the Indemnitors on August 24, 2000, a court "can grant summary judgment on an issue of contract interpretation if the contractual language being interpreted is subject to only one reasonable interpretation." Emerson Radio Corp. v. Orion Sales,

Inc., 253 F.3d 159, 164-65 (3d Cir.2001). See also LeJeune v. Bliss-Salem, Inc., 85 F.3d 1069, 1073 (3d Cir.1996)("Where ... a contract is unambiguous, it is appropriate for the court to determine its meaning as a matter of law at the summary judgment stage.").

DISCUSSION

A contract will be found to be ambiguous if, and only if, it is reasonably or fairly susceptible of different constructions and is capable of being understood in more senses than one and is obscure in meaning through indefiniteness of expression or has a double meaning. Metzger v. Clifford Realty Corp., 476 A.2d 1, 5 (Pa.Super.1984).[14] In determining whether an ambiguity exists, it is the role of the court to consider the words of the contract, the alternative meaning suggested by counsel, and the nature of the objective evidence to be offered in support of that meaning. Mellon Bank, N.A. v. Aetna Business Credit, Inc., 619 F.2d 1001, 1011 (3d Cir.1980).

Continental Casualty's indemnification claim is based on the following provision of the GAI executed by the Indemnitors on April 24, 2000:

\* \* \*

> 2. The Indemnitors will indemnify and save [Continental Casualty] harmless from and against every claim, demand, liability, cost, charge, suit, judgment and expense which

---

[14]There is no dispute that Pennsylvania law governs this diversity case.

> [Continental Casualty] may pay or incur in consequence of
> having executed, or procured the execution of such bonds, or
> any renewals or continuations thereof or substitute
> therefor, including, but not limited to, fees of attorneys,
> whether on salary, retainer or otherwise, and the expense of
> procuring, or attempting to procure, release from liability,
> or in bringing suit to enforce the obligation of any of the
> Indemnitors under this Agreement....

\* \* \*

Continental Casualty maintains that paragraph 2 of the GAI is clear and unambiguous regarding its right to be indemnified for the attorneys' fees and costs, as well as the interest on the attorneys' fees and costs, awarded in favor of Schlosser and against Continental Casualty in Civil Action No. 02-828 based on the language of the performance bond issued on Fleming Steel's behalf for the Oceana project. On the other hand, the Indemnitors assert that paragraph 2 of the GAI is ambiguous and may be interpreted as limiting Continental Casualty's right to be indemnified with respect to attorneys' fees to Continental Casualty's "own in-house attorneys' fees" incurred in connection with litigation on a performance bond, not the attorneys' fees of an adverse party in such litigation.

Based on the extremely broad and inclusive language of paragraph 2 of the GAI, the Court cannot conclude that the Indemnitors' narrow interpretation of Continental Casualty's right to be indemnified for attorneys' fees is a reasonable construction of the paragraph. The Court agrees with the Indemnitors that paragraph 2 encompasses attorneys' fees incurred

14

by Continental Casualty to defend or settle a performance bond claim. However, paragraph 2 also provides that Continental Casualty is entitled to be indemnified for "every ... judgment" paid as a result of the issuance of a performance bond, and the attorneys' fees at issue clearly were part of a judgment. In fact, the Third Circuit characterized the attorneys' fees sought by Schlosser in Civil Action No. 02-828 as an "integral part" of the relief sought by Schlosser and dismissed the appeal filed by Fleming Steel and Continental Casualty for lack of jurisdiction pending entry of a final judgment which included Schlosser's attorneys' fees.

With regard to the evidence offered by the Indemnitors in opposition to Continental Casualty's motion for summary judgment, the one exception to enforcement of a principal's liability for a surety's payment to an obligee under a performance bond is bad faith or fraudulent payment. See United States Fidelity & Guaranty Co. v. Feibus, 15 F.Supp.2d 579, 585 (M.D.Pa.1998), aff'd, 185 F.3d 864 (3d Cir.1999). The Indemnitors assert that a genuine issue of material fact exists regarding whether Continental Casualty "acted in bad faith by drafting a performance bond that provided for payment of attorneys' fees where the parties to the subcontract mutually agreed to remove

attorneys' fees from the underlying subcontract."[15] (Docket No. 22, pp. 4-6).

In support of the foregoing argument, the Indemnitors submitted an affidavit of Mr. Kohn which, in summary, states:

(1) in the course of negotiating the subcontract with Schlosser on Fleming Steel's behalf, Mr. Kohn objected to language in the proposed subcontract which allowed Schlosser to recover attorneys' fees in the event of a dispute resulting in litigation;

(2) in fact, Fleming Steel consistently refuses to enter into any contract allowing for the recovery of attorneys' fees by an opposing party in the event of a dispute;

(3) during a telephone conversation with J. Frederic Wagner of Schlosser on June 2, 2000, Mr. Kohn reiterated the changes to be made to the subcontract before execution, including deletion of the language allowing for Schlosser's recovery of attorneys' fees in the event of a dispute;

---

[15]As to this assertion, the Court notes that the performance bond was executed on a form provided by Schlosser. It was not drafted by Continental Casualty. (Docket No. 17, Exh. A and Docket No. 26, ¶ 8). Moreover, according to the undisputed affidavit of Paul Davis, Branch Manager of CNA's Pittsburgh office, which was submitted by Continental Casualty in response to the Indemnitors' brief in opposition to its motion for summary judgment, the decision to modify a bond form supplied by a general contractor, such as Schlosser, would be made by the general contractor, not the surety; as a matter of construction contracting practices and surety underwriting, a surety underwriter is not permitted to contact a general contractor or any other bond obligee to negotiate the terms of any bond form without the express consent of the surety's account; requests to modify the terms of a bond form generally are made by the account directly to the general contractor, not the surety; if a surety modified and executed a bond form without the permission of the obligee and the account, the bond form would be rejected by the obligee; and the records of CNA contain no reference or evidence that Fleming Steel or Mr. Kohn requested Schlosser to permit CNA to modify the terms of the bond form or requested CNA to modify Schlosser's bond form. (Docket No. 26).

16

(4) Mr. Kohn's demand for modification of the subcontract was accepted by Mr. Wagner and Schlosser and the subcontract was drafted and executed without the language allowing Schlosser's recovery of attorneys' fees in the event of a dispute;

(5) on June 2, 2000, Mr. Kohn also spoke with Joseph A. Corriere, an employee of CNA, and specifically instructed Mr. Corriere not to include any provision in the performance bond allowing for Schlosser's recovery of attorneys' fees in the event of a dispute;

(6) following execution of the subcontract between Schlosser and Fleming Steel, Mr. Kohn forwarded a copy to Mr. Corriere to procure the performance bond for the Oceana project with the specific instruction to "[p]lease produce the [performance bond] as discussed and in accordance with the subcontract;"[16]

(7) Mr. Corriere sent the performance bond to Mr. Kohn on June 8, 2000; and

(8) when Mr. Kohn received the performance bond, he reviewed it to the best of his ability and did not realize that, contrary to their agreement, Mr. Corriere and CNA included the language allowing Schlosser to recover attorneys' fees in the event of a dispute.

(Docket No. 28).

With regard to showing bad faith on the part of a surety who makes payment under a performance bond and seeks indemnity from the principal under a master indemnification agreement, the district court in Feibus, supra, stated:

\* \* \*

> Bad faith requires a showing of dishonest purpose or improper motive. Klinger v. State Farm Mut. Auto. Ins. Co., 895 F.Supp. 709, 713 (M.D.Pa.1995). Gross negligence or bad judgment is insufficient to amount to bad faith. Id. At

---

[16]The Indemnitors attached three exhibits to Mr. Kohn's affidavit which support his account of the negotiations of the subcontract with Schlosser. (Docket No. 28, pp. 8-10).

17

> 714. Defendants have not submitted any evidence that
> plaintiff made these payments because of an improper motive
> or purpose. Moreover, some courts have held that
> allegations of excessive payments do not rise to the level
> of bad faith. See, e.g., Engbrock v. Federal Ins. Co., 370
> F.2d 784, 785-87 (5th Cir.1967)(allegations that surety made
> excessive payments at most alleges negligence); Fireman's
> Fund Ins. Co. V. Nizdil, 709 F.Supp. 975, 976-77 (D.Or.1989)
> (allegation that surety overpaid claim failed to raise an
> issue of material fact that would preclude summary
> judgment).
>
> * * *

15 F.Supp.2d at 587.

In light of the standard for establishing a surety's bad faith in connection with a payment under a performance bond, the Court concludes that Mr. Kohn's affidavit fails to raise an issue of material fact that precludes the entry of summary judgment in favor of Continental Casualty. There simply is no basis for attributing a dishonest purpose or improper motive to Continental Casualty relating to the performance bond's provision allowing the recovery of attorneys' fees by Schlosser in the event of a breach of the subcontract by Fleming Steel on the Oceana project. As noted by Continental Casualty, the Indemnitors' theory that due to bad faith Continental Casualty increased its financial risk to Schlosser by including the attorneys' fees language in the performance bond, despite being instructed by Mr. Kohn not to do so, makes no sense from a financial standpoint. (Docket No. 24, p. 6). Continental Casualty had nothing to gain by failing to comply with Mr. Kohn's instruction regarding the omission of language allowing Schlosser to recover attorneys' fees for

18

Fleming Steel's breach of the subcontract. At most, the averments in Mr. Kohn's affidavit raise an issue of material fact regarding negligence on the part of Continental Casualty. However, negligence, even gross negligence, is insufficient to show that a surety made a payment under a performance in bad faith.[17] Under the circumstances, Continental Casualty's motion for summary judgment will be granted.

                                                */s/ William L. Standish*
                                                William L. Standish
                                                United States District Judge

Date: November 9, 2010

---

[17] The Court agrees with Continental Casualty that the evidence produced by the Indemnitors has potentially identified negligence on the part of Mr. Kohn. (Docket No. 24, p. 6). As noted previously, in his affidavit, Mr. Kohn avers that he reviewed the performance bond issued by Continental Casualty upon receipt "to the best of his ability" and did not realize that the bond allowed for Schlosser's recovery of attorneys' fees from Fleming Steel if a dispute arose. Although Mr. Kohn is not an attorney, he is an experienced businessman as evidenced by his active participation in the negotiations for the subcontract with Schlosser and by the amount of the performance bond for Fleming Steel's subcontract on the Oceana project ($1,661,283.00). It should also be noted that the performance bond is a one-page document and the body of the document in which the attorneys' fees language is set forth is approximately one-half of the one page. The language was not buried in fine print in a voluminous document.